HEARD APRIL TERM, 1871.

FLEMING *vs.* ROBERTSON.

By contract under seal dated September 14, 1864, C promised to pay to F $12,000 "in Confederate money," "by the 28th instant;" "and upon failure to pay by that time," to pay to F $12,000 in six per cent. bonds of the five hundred millions loan, within twelve months from that date." In an action of covenant on the contract: *Held*, That the measure of damages was the value of the bonds at the time the contract was made.

BEFORE GLOVER, J., AT COLUMBIA, APRIL TERM, 1871.

This was an action of covenant by C. E. Fleming against Thomas J. Robertson, executor of John Caldwell, deceased, on a contract as follows:

"By the 28th instant, we, or either of us, promise to pay Dr. C. E. Fleming, or order, twelve thousand dollars in Confederate money; and upon failure to pay by that time, we, in like manner, promise to pay said C. E. Fleming, or order, twelve thousand dollars in six per cent. bonds of the five hundred millions loan, non-taxable, within twelve months from that date, with coupons bearing interest from the 28th instant; or should the coupons be off, then to pay in Confederate money in lieu of the coupons, at their value in gold or cotton when the payment is made; no coupons on said bonds to be taken off before they become due. These bonds to be estimated at one hundred and thirty-five dollars for each one hundred dollars on their face, to make up the twelve thousand dollars. Witness our hands and scals, this 14th day of September, 1864.

"W. SHIVER. [SEAL.]

"JOHN CALDWELL. [SEAL.]

Witness: H. H. THOMSON."

The other facts of the case bearing upon the only point of law made by the appeal are stated in the opinion of the Court.

The verdict was for the plaintiff for $1,627, and the defendant appealed.

*C. D. Melton*, for appellant:

I. What is the measure of damages recoverable in actions *ex contractu* is, in general, a question of law.—Sedg. on Dam., *30, *201, *472.

II. The legal measure of damages recoverable for breaches of contract is regulated by these principles, viz:

1. That damages are to be awarded only for the actual injury sustained by the default.—Sedg., *200, *210, *229; *Garrett* vs. *Stuart*, 1 McC., *516.

2. That the contract itself furnishes the measure of the damages.—Sedg., * 202, *Tayloe* vs. *Riggs*, 1 Pet., 598.

3. That the damages recoverable must be the result, and the natural and proximate result, of the breach complained of.—2 Green. Ev., §§ 254, 256; Sedg., *57, *204.

III. Where the contract is one by which the payee is to receive, not money, but specific property, the value of the property, at the time fixed for the delivery, is the true measure of damages.

1. In such a contract "the value of the original consideration is not to be enquired into, but the value of the property is the mea-

sure; because this is the remuneration fixed by the agreement."—Sedg., *203, and cases there cited.

2. The value of the specific articles, on the day on which they should have been delivered, is the true measure.—*Price* vs. *Justrobe,* Harp., 111 ; Sedg., *239–41, and cases there cited.

3. So held in this State in reference to contracts made during the Revolution, which were payable in a class of securities known as "Indents."—*Davis* vs. *Ex'rs of Richardson,* 1 Bay, 105 ; *Wigg* vs. *Ex'rs of Garden,* 1 Bay, 357.

4. Exceptions to this rule are only found in cases where special damages are proved resulting from the breach, and in cases where there have been changes in value between the time fixed for delivery and the time of trial.

5 The Confederate bonds which were in this case to be paid were "specific articles" within the meaning of the rule. Any thing that is not money falls properly in this class.—*Robinson* vs. *Noble,* 8 Pet , 198.

IV. This rule as to the measure of damages recoverable on breach of contract, is not affected by the Act of 1869, nor by the Ordinance of the Convention of 1865.

1. The A. A. 1869 (14 Stat., 277,) is expressly limited to determining the value of contracts made with reference to Confederate States notes as a basis of value.

2. The Ordinance of September, 1865, (Journal of Convention, 111,) furnishes merely a rule of evidence for determining what the contract was.—*Copes* vs. *Rutland,* 15 Rich., 84.

3. Neither the A. A. 1869, nor the Ordinance of 1865, can operate to change a contract for the payment of specific articles into a contract for the payment of money; nor can either operate to change the measure of liability for a breach of a contract.

4. "Any legislation which would increase or lessen the measure of the recovery for the breach of a contract impairs its obligation and must be void."—*Kirtland* vs. *Molton,* 41 Ala., 560 ; *McCracken* vs. *Hayward,* 2 How. U. S., 608.

See cases: On Ordinance of North Carolina—*Woodfin* vs. *Sluder,* Phillips' Law, 200 ; on Ordinance of Georgia—*Slaughter* vs. *Culpepper,* 35 Geo., 25 ; *Evans* vs. *Walker,* 35 Geo., 117 ; *Taylor* vs. *Flint,* 35 Geo., 124 ; *Cherry* vs. *Walker,* 36 Geo., 327 ; *Field* vs. *Leak,* 36 Geo., 362 ; *High* vs. *McHugh,* 38 Geo., 284 ; on Ordinance of Alabama—*Kirtland* vs. *Molton,* 41 Ala., 548 ; *Herbert* vs. *Easton,* 43 Ala., 547.

V. The obligor, John Caldwell, being a naked surety, is liable alone on the letter of his contract. He cannot be affected unfavorably by any rights or equities which may exist between the parties to the consideration of the contract.

1. A surety has a right to stand upon the very terms of his contract; and if a variation be made, and he does not assent to it, the variation is fatal—*Miller* vs. *Stewart*, 9 Wheat., 680; 2 Bouv. Institutes, § 1422; *Smith* vs. *United States*, 2 Wallace, 233; *U. S.* vs. *Boyd*, 15 Peters, 187.

2. A surety who has not received or shared the consideration cannot be held liable on an implied promise.—*Wells* vs. *Girling*, 8 Taunt., 737 (4 E. C. L., 264); *Barlow* vs. *Bishop*, 1 East., 432; *Page's Adm'rs* vs. *Bank of Alexander*, 7 Wheat., 37; *Butler* vs. *Rawson*, 1 Denio, 106.

3. The fact that the principal obligor placed funds in the hands of his surety to meet the obligation, does not enlarge the plaintiff's remedy against the surety.

*McMaster & Leconte*, contra:

1. The obligor, John Caldwell, is bound as principal debtor.—*Berry* vs. *Radcliffe*, 6 John. Ch., 621; Bouv., L. D., Title Surety, 1 Bur., 373.

2. The obligors having received valuable consideration, did not fulfill their part of the contract by attempting to tender what purported to be Confederate bonds, after they had lost all value.—*Williamson* vs. *Bacot*, 1 Bay, 62; Chitty on Contracts, 7th Ed., 751, note.

3. The measure of damages in such a contract is not governed by the rule with regard to " specific articles," but must be the value of Confederate bonds at the time and place of contract.—*Thorington* vs. *Smith*, Am. Law Times, 2, 169; *Witsell* vs. *Riggs*, 14 Rich., 186; *Hudspetter* vs. *Johnson*, 34 Ga., 403; *Oliver* vs. *Coleman*, 36 Ga., 857; *Ex'ors of Fowl* vs. *Todd*, 1 Bay, 176.

4. This contract, coming properly under the Ordinance of the Convention of 1865, p. 111, the jury should be allowed a " liberal discretion," and the verdict being less than it would be by a strict application of the Ordinance or Corbin's Bill, it must stand unless objected to by the plaintiff.—*Evans* vs. *Walker*, 35 Ga., 117; *Taylor* vs. *Flint*, 35 Ga., 124; *High* vs. *McHugh*, 38 Ga., 285; *Peay* vs. *Briggs*, 2 N. & McC., 186.

5. Any other construction would be unjust, and violate the spirit

of the contract.—*Hum* vs. *McLaws*, 1 Bay, 96–98 ; *Herbert & Ges-ler* vs. *Eason*, 43 Ala., 552.

Nov. 20, 1871.   The opinion of the Court was delivered by

WRIGHT, A. J.   The late Mr. John Caldwell, with Wm. Shiver, on the 14th of September, 1864, executed a sealed instrument, by which they jointly and severally promised to pay to the plaintiff, C. E. Fleming, or his order, by the 28th September of the same month, twelve thousand dollars in Confederate money, and on failure to do so, promised to pay him within twelve months from the date, $12,000 in 6 per cent. bonds of the five hundred million loan, the bonds to be estimated at $135 for each one hundred dollars ($100) on their face, to make up the $12,000.

The pleas were, first, a tender on 28th September, 1865, of the specific bonds agreed to be paid at that date ; and, secondly, *non-damnificatus*.   The error assigned, to be determined by us, is the refusal of the Circuit Judge, at the instance of defendant's counsel, to charge the jury that, "if they shall find that a tender was not made, the measure of damages is the value of the bond at the time they should have been delivered," and his instructions, "that if they should find that a tender was not made, the defendant was liable for damages for the breach of the covenant, to be measured by the value of the bonds at the time the contract was made," to which the defendant excepted.   The verdict was for the plaintiff in the sum of $1,627.   It is not necessary to consider how the rights of this plaintiff might have been changed, if the tender, in the very securities which he had agreed to accept, had been within the period fixed by the instrument.

The jury have decided the fact of tender adversely to the defendant, and the effect of this proposition is to claim all the benefit to which he may have been entitled by the agreement, in the same manner as if he had fulfilled, to the very letter, all the obligations which it imposed on him.   The consideration of the contract is expressed, and the intention of the parties is clearly apparent on its face.   Within fourteen days of the date the defendant was to pay the plaintiff $12,000 in Confederate money.   A fixed and definite amount was agreed upon, which had a value that might be ascertained when compared with that of specie or the national currency. If the defendant neglected to perform a condition, which was to attach as his failure to comply with the primary obligation he assumed, the damages to be awarded should be sufficient " to repair

the actual injury sustained by the default." We do not propose to question the general principle which applies to the measure of damages, where the party is to receive not money, but property. Confederate bonds cannot more properly be termed money than Confederate notes, but yet it is plain that, by this contract, they were treated as money; the true intention was that the plaintiff should have the benefit of the consideration for which he parted with his property, and this was the $12,000 to be paid at the time stipulated in the notes described, or their value, and this has been fixed and ascertained by the verdict of the jury. The argument of the appellant proceeds upon the ground that, on the failure of payment by the 28th of September, 1864, he had the right to discharge the contract by the delivery of Confederate bonds, viewed in the light of property, without regard to their utter want of value at the time they should have been delivered. This position is not maintainable, for in the event of a non-compliance with his primary obligation, " he was to pay $12,000 in 6 per cent. bonds within twelve months from the 14th September, 1864."

The sum still remaining due was expressed, and that he engaged to pay. His laches in the payment within the period fixed by the contract cannot operate to the prejudice of the plaintiff by destroying his right to the value of the twelve thousand dollars Confederate money, which was to be substituted by the $12,000 in bonds, and which were not substituted by the defendant within the time allowed him by agreement. There is nothing in the contract to show that any risk was to be assumed by the plaintiff in the provision made in the event of non-payment by the 28th of September, 1864, by any change in the value of the securities which he was to accept for the debt, beyond that which might arise from the rate at which they were to be estimated. When the defendant failed to comply even with the condition which extended the time of payment, and allowed him within the period to make satisfaction in a security of a different character, the plaintiff had a right to insist on his primary contract, which remained unfilled by the defendant. To hold that he was to accept worthless paper in satisfaction of his debt, which was to be paid at a rate of value then agreed upon, would not only be inconsistent with every principle of justice, but would give an intent to the contract entirely at variance with its plain design and purpose. The intention of the parties is so apparent in this contract, that to avoid the gross wrong to the plaintiff which would follow the adoption of the proposition contended for

on the part of the appellant, it is not necessary to call to our aid the ruling of the Court in *Williams* vs. *Bacot,* 1 Bay, 62.

There, an offer of payment was made in 1781, by paper currency, which, by the Act of 1778, was a legal tender in all cases whatsoever. But the Court said : " This tender, made after this species of money had gone out of circulation, is certainly no bar to the plaintiff's recovery. Under the peculiar circumstances and situation of the State at that period, no Court of justice could uphold a plea of that kind. The depreciation Act fixed the lowest period of its legal existence down to the 10th of May, 1770, and no further. To give, therefore, any efficiency to a tender made after that time would in fact be to receive and give it circulation, after it was sunk and good for nothing." The depreciation Act was not passed until March, 1783, 4 Stat., 563. Confederate notes, bonds or securities of any kind, were entirely worthless after the 1st day of May, 1865, and were not therefore included in the Act of March 26, 1869, entitled " An Act to determine the value of contracts made in Confederate States notes, or their equivalent."—14 Stat., 277.

The motion to set aside the verdict, and for a new trial, is dismissed.

*Moses,* C. J., and *Willard,* A. J., concurred.